UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **CARL SMITH** | **CIVIL ACTION** |
| **VERSUS** | **NO. 14-1294** |
| **BURL CAIN, WARDEN** | **SECTION: "J"(1)** |

## REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts. Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing. See 28 U.S.C. § 2254(e)(2). Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE** as untimely.

Petitioner, Carl Smith, is a state prisoner incarcerated at the Louisiana State Penitentiary in Angola, Louisiana. On April 17, 1986, he was convicted of attempted first degree murder and aggravated rape under Louisiana law.[1] He was sentenced on the attempted first degree murder conviction to a term of fifty years imprisonment and on the aggravated rape conviction to a term of life imprisonment without benefit of parole, probation, or suspension of sentence.[2] On March 4, 1987, the Louisiana First Circuit Court of Appeal conditionally affirmed those convictions and

---

[1] State Rec., Vol. 1 of 4, minute entry dated April 17, 1986; State Rec., Vols. 1 and 3 of 4, jury verdict forms.
[2] State Rec., Vol. 1 of 4, transcript of April 25, 1986; State Rec., Vol. 1 of 4, minute entry dated April 25, 1986.

sentences.³   However, the Court of Appeal ordered that the case be remanded for further proceedings with respect to petitioner's claim that the trial court erred when it refused to order the state to produce the initial statement made by the victim, holding:

> [W]e will remand the case to the trial court for its determination of: (1) whether or not the written or recorded statements of the victim contain inconsistencies with her trial testimony, or other evidence favorable to the accused; and if so, (2) whether or not such evidence is material to the defendant's guilt or punishment, employing the test for determining materiality, as stated in United States v. Bagley, *supra*.
>   In the event of an affirmative determination of both of these factors by the trial court, a new trial will be required. However, upon a contrary finding, the conviction will stand, subject to defendant's right to appeal the adverse ruling. For purposes of any future appeal, all items reviewed *in camera* shall be sealed and made a part of the record.⁴

At a hearing on March 13, 1987, the district court then found that there were no inconsistencies in victim's prior statements and her trial testimony and therefore denied the motion for a new trial.⁵   Petitioner again appealed, and the Louisiana First Circuit Court of Appeal affirmed.⁶   On February 26, 1988, the Louisiana Supreme Court then denied petitioner's related writ application.⁷

In 2012, petitioner filed with the state district court a "Motion for Nunc Pro Tunc Determination," asking that a "meaningful inquiry" be made with respect to his competency.⁸  When he failed to receive a ruling on that motion, he filed a related application for a writ of mandamus with the Louisiana First Circuit Court of Appeal.⁹   That writ application was granted,

---

³ State v. Smith, 504 So.2d 1070 (La. App. 1st Cir. 1987); State Rec., Vol. 1 of 4.
⁴ Id. at 1080.
⁵ State Rec., Vol. 1 of 4, transcript of March 13, 1987; State Rec., Vol. 1 of 4, minute entry dated March 13, 1987.
⁶ State v. Smith, No. KA 87 0473 (La. App. 1st Cir. Nov. 10, 1987); State Rec., Vol. 4 of 4.
⁷ State v. Smith, 520 So.2d 423 (La. 1988); State Rec., Vol. 1 of 4.
⁸ State Rec., Vol. 1 of 4.  In his related application for a writ of mandamus, petitioner alleges that the motion was filed with the state district court on or about January 6, 2012.
⁹ State Rec., Vol. 1 of 4.

and the matter was transferred to the state district court for consideration.[10] The state district court construed the motion as an application for post-conviction relief and denied that application as untimely pursuant to La. Code Crim. Proc. art. 930.8.[11] Petitioner then filed a motion for reconsideration[12] which was denied.[13] His related writ applications were likewise denied by the Louisiana First Circuit Court of Appeal on October 29, 2012,[14] and by the Louisiana Supreme Court on April 19, 2013,[15] and November 1, 2013.[16]

On May 29, 2014, petitioner then filed the instant federal application for *habeas corpus* relief.[17] The state has filed a response arguing that the application should be dismissed as untimely.[18] The state is correct.

## 28 U.S.C. § 2244(d)(1)(A)

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") generally requires that a petitioner bring his § 2254 claims within one (1) year of the date on which his underlying criminal judgment becomes "final."  28 U.S.C. § 2244(d)(1)(A).  However, with respect to prisoners such as Smith, whose convictions and sentences became final prior to the enactment of the AEDPA, a grace period applies, and the one-year statute of limitations began to run in such

---

[10] State v. Smith, No. 2012 KW 0610 (La. App. 1st Cir. May 21, 2012); State Rec., Vol. 1 of 4.
[11] Judgment and Reasons for Judgment dated June 29, 2012; State Rec., Vol. 1 of 4.
[12] State Rec., Vol. 1 of 4.
[13] State Rec., Vol. 1 of 4, Order dated August 3, 2012.
[14] State v. Smith, No. 2012 KW 1322 (La. App. 1st Cir. Oct. 29, 2012); State Rec., Vol. 1 of 4.
[15] State ex rel. Smith v. State, 111 So.3d 1033 (La. 2013); State Rec., Vol. 1 of 4.
[16] State ex rel. Smith v. State, 125 So.3d 426 (La. 2013); State Rec., Vol. 1 of 4.
[17] "A prisoner's habeas application is considered 'filed' when delivered to the prison authorities for mailing to the district court." Roberts v. Cockrell, 319 F.3d 690, 691 n.2 (5th Cir. 2003).  Petitioner states under penalty of perjury that he placed his application in the prison mailing system on May 29, 2014.  Rec. Doc. 3, p. 15.  The undersigned will accept that statement as true for the purposes of this opinion and will consider that date as the date of filing. However, it must also be noted that the instant case was not actually opened until petitioner paid the required filing fee more than a year later in August of 2015.
[18] Rec. Doc. 14.

cases on the AEDPA's effective date, April 24, 1996. Flanagan v. Johnson, 154 F.3d 196, 200-02 (5th Cir. 1998). Therefore, the one-year period that he had to file his application for federal *habeas corpus* relief expired on April 24, 1997, unless that deadline was extended through tolling.

The Court first considers statutory tolling. Regarding the statute of limitations, the AEDPA expressly provides: "The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2). However, petitioner had no such applications pending before the state courts at any time during the period of April 24, 1996, through April 27, 1997. Therefore, he clearly is not entitled to statutory tolling.[19]

The Court must next consider equitable tolling. The United States Supreme Court has expressly held that the AEDPA's statute of limitations is subject to equitable tolling. Holland v. Florida, 560 U.S. 631, 645 (2010). However, "a petitioner is entitled to equitable tolling only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." Id. at 649 (internal quotation marks omitted); accord Davis v. Johnson, 158 F.3d 806, 811 (5th Cir. 1998) (holding that the AEDPA's statute of limitations can be equitably tolled "in rare and exceptional circumstances"). A petitioner bears the burden of proof to establish entitlement to equitable tolling. Alexander v. Cockrell, 294 F.3d 626, 629 (5th Cir. 2002). In the instant case, petitioner has brought forth no evidence

---

[19] Although he subsequently filed such an application, applications filed *after* the expiration of the federal statute of limitations have no bearing on § 2244(d)(2) tolling determinations. See Scott v. Johnson, 227 F.3d 260, 263 (5th Cir. 2000); Magee v. Cain, Civ. Action No. 99-3867, 2000 WL 1023423, at *4, aff'd, 253 F.3d 702 (5th Cir. 2001); Williams v. Cain, Civ. Action No. 00-536, 2000 WL 863132, at *2 (E.D. La. June 27, 2000). Simply put, once the federal limitations period has expired, "[t]here [i]s nothing to toll." Butler v. Cain, 533 F.3d 314, 318 (5th Cir. 2008).

demonstrating that he is entitled to such tolling, and this Court knows of no reason that would support equitable tolling of the statute of limitations.

Lastly, the Court also notes that the United States Supreme Court has held: "[A]ctual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar ... or, as in this case, expiration of the statute of limitations." McQuiggin v. Perkins, 133 S. Ct. 1924, 1928 (2013).  That said, the Supreme Court took care to note: "We caution, however, that tenable actual-innocence gateway pleas are rare:  '[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" Id. at 1928 (quoting Schlup v. Delo, 513 U.S. 298, 329 (1995)).  Here, petitioner does not invoke McQuiggin and, in any event, he has not made colorable showing that he is actually innocent in light of "new evidence."

Because petitioner is not entitled to statutory tolling, and because he has not established that he is eligible for equitable tolling or that the McQuiggin "actual innocence" exception applies, his federal application for *habeas corpus* relief had to be filed no later than April 24, 1997, in order to be timely under 28 U.S.C. § 2244(d)(1)(A).  His federal application was not filed until May 29, 2014, and, therefore, it is untimely under that provision.

## 28 U.S.C. § 2244(d)(1)(D)

Petitioner argues, however, that the timeliness of his federal application should not considered under 28 U.S.C. § 2244(d)(1)(A).  Rather, he argues that 28 U.S.C. § 2244(d)(1)(D) should apply.  Under that subsection, the AEDPA's one year limitations period commences not from the date of finality but instead from "the date on which the factual predicate of the claim or

claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(D).  Nevertheless, *even if* Subsection D is applied, petitioner's federal application is still untimely.

Here, petitioner's only cognizable claim is that he is entitled to relief because the trial court failed to hold a proper sanity commission hearing to determine his competency.[20]  On that issue, the record reflects that, on October 16, 1985, the state district court granted the defense's application for the appointment of a sanity commission and appointed Drs. Buford Autin and Mary Eschete to examine petitioner.[21]  The doctors examined petitioner and presented written reports to the court.[22]  A minute entry dated March 11, 1986 then states:

> These matters, pursuant to previous fixing, were this day called for Sanity Hearing *in the presence of the accused* and his attorney, Mr. Paul E. Brown and the Assistant District Attorney, Mr. Keith M. Whipple.
> At this time, Counsel offered and introduced into evidence "S-1", being the report of Dr. Buford Autin dated November 7, 1985, and "S-2", being the report of Dr. Mary Eschete dated November 5, 1985.

---

[20] The Court notes that petitioner also claims that the state courts erred in failing to consider this claim in the post-conviction proceedings on the ground that it was untimely pursuant to La. Code Crim. Proc. art. 930.8  However, that claim simply is not cognizable in a federal *habeas corpus* proceeding.  "Article 930.8, which sets forth the limitations period and the exceptions thereto, is a provision of state law, and, as such, its interpretation is left to the state courts." Hunter v. Cain, Civ. Action No. 11-670, 2011 WL 5024355, at *4 n.18 (E.D. La. Sept. 23, 2011), adopted, 2011 WL 5023908 (E.D. La. Oct. 20, 2011); accord Ballay v. Louisiana, No. 06-10699, 2007 WL 4413990, at *2 (E.D. La. Dec. 13, 2007).  Moreover, in any event, as the United States Fifth Circuit Court of Appeals has explained:

> [O]ur circuit precedent makes abundantly clear that errors in state postconviction proceedings will not, in and of themselves, entitle a petitioner to federal habeas relief. See, e.g., Hallmark v. Johnson, 118 F.3d 1073, 1080 (5th Cir. 1997) ("[I]nfirmities in state habeas proceedings do not constitute grounds for relief in federal court."); Nichols v. Scott, 69 F.3d 1255, 1275 (5th Cir. 1995) ("An attack on a state habeas proceeding does not entitle the petitioner to habeas relief in respect to his conviction, as it is an attack on a proceeding collateral to the detention and not the detention itself.") (internal quotations omitted).  Rather, we must find constitutional error at the trial or direct review level in order to issue the writ.

Morris v. Cain, 186 F.3d 581, 585 n.6 (5th Cir. 1999).  A petitioner's inclusion of such a claim therefore has no bearing on the timeliness of a federal application.  Campbell v. Cain, Civ. Action No. 06-3983, 2007 WL 2363149, at *2 n.23 (E.D. La. Aug. 15, 2007).

[21] State Rec., Vol. 1 of 4, Order dated October 16, 1985.

[22] State Rec., Vol. 1 of 4, Letter from Dr. Eschete dated November 5, 1985, and Letter from Dr. Autin dated November 7, 1985.

>Both counsel then submitted the matter on said reports.
>Whereupon, the Court, after reading and considering said reports, ruled that the defendant is presently sane, that he understands the nature of the charges against him, and that he is capable of aiding in his defense.[23]

Because petitioner was present in court for the sanity commission hearing held on March 11, 1986, he was aware of the "factual predicate" for any claim concerning a purported defect in that proceeding on that same date.[24] Because that date was also before the effective date of the AEDPA, petitioner would still be entitled to nothing more than the benefit of the "grace period" previously discussed. Therefore, even under Subsection D, the deadline for his federal application would still be April 24, 1997. See, e.g., Cisneros v. Stephens, Civ. Action No. 2:130-CV-126, 2014 WL 427188, at *8 (S.D. Tex. Feb. 4, 2014); Kizzee v. Quarterman, No. 3:04-CV-2131, 2006 WL 2739346, at *3 (N.D. Tex. Sept. 25, 2006). As a result, even under Subsection B, his federal application would be untimely.

## RECOMMENDATION

It is therefore **RECOMMENDED** that the federal application for *habeas corpus* relief filed by Carl Smith be **DISMISSED WITH PREJUDICE** as untimely.

---

[23] State Rec., Vol. 1 of 4, minute entry dated March 11, 1986 (emphasis added).

[24] Even if petitioner perhaps did not recognize the legal significance of the purported defect until later, that is of no moment. See, e.g., Klein v. Franklin, 437 F. App'x 681, 684 (10th Cir. 2011) (The "limitations period begins to run when the petitioner knows of the facts giving rise to the habeas claim; it is not required that he or she understand the legal significance of those facts."); Owens v. Boyd, 235 F.3d 356, 359 (7th Cir. 2000); Batiste v. Louisiana, Civ. Action No. 09-2558, 2009 WL 1649476, at *3 (E.D. La. June 10, 2009). Subsection D runs from when the "factual predicate" of a claim could have been discovered; not from when a petitioner discovered a legal argument which could be asserted based on those facts. Owens, 235 F.3d at 359; Johnson v. Gunnels, No. 1:13-cv-3156, 2014 WL 5307604, at *5 (N.D. Ga. Oct. 16, 2014); accord Esteen v. Cain, No. 09-5450, 2010 WL 497764, at *2 n.24 (E.D. La. Feb. 5, 2010). Likewise, the limitations period is not delayed while a petitioner gathers evidence in support of his claim. Flanagan v. Johnson, 154 F.3d 196, 199 (5th Cir. 1998); Redmond v. Jackson, 295 F. Supp. 2d 767, 772 (E.D. Mich. 2003); Tate v. Pierson, 177 F. Supp. 2d 792, 800 (N.D. Ill. 2001), aff'd, 52 Fed. App'x 302 (7th Cir. 2002).

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[25]

New Orleans, Louisiana, this fourteenth day of December, 2015.

                                                  **SALLY SHUSHAN**
                                                  **UNITED STATES MAGISTRATE JUDGE**

---

[25] Douglass referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.